**Bessie Edith HAYES, Plaintiff,**

v.

**UNITED STATES of America, Defendant and Third Party Plaintiff (Kathleen Pearle HAYES, Third Party Defendant).**

**No. 202–E.**

United States District Court
N. D. West Virginia, Elkins Division.
July 7, 1955.

Robert E. Maxwell, Elkins, W. Va., for third party defendant.

BOREMAN, District Judge.

This action was instituted by the plaintiff, Bessie Edith Hayes, the mother of Ray William Hayes, Jr., deceased, against the United States of America to recover the sum of $2,000, the proceeds of United States Government insurance policy No. K–1,047,984 issued to her son on January 1, 1938, and in which policy the plaintiff was named as the sole beneficiary. The complaint charged that no change of beneficiary was ever made by the insured during his lifetime and that the policy was in full force and effect at the time of his death on February 28, 1948.

The complaint further charged that after the death of the insured, the Veterans' Administration, by letter dated April 13, 1948, informed the plaintiff that she was the beneficiary named in the policy as above numbered in the amount of $2,000 and requested the plaintiff to furnish certain proof in support of her claim as such beneficiary; that in compliance with said request, the plaintiff furnished such proof as was required although she was unable to produce the policy, which was not in her possession but, so far as she knew, had been lost or destroyed; that on February 9, 1950, said Veterans' Administration advised the plaintiff by letter that it would not pay to her the proceeds of said policy.

The defendant, The United States of America, filed its answer denying that the plaintiff was the sole beneficiary under the provisions of the $2,000 insurance policy, averring that on July 1, 1943, Ray William Hayes, Jr., the insured, executed an application for $10,000 National Service Life Insurance, wherein he directed that his wife, Kathleen Pearle Hayes, be the principal beneficiary and his mother, the plaintiff, the contingent beneficiary, and that the said application constituted, in legal effect, a change in the designation of the beneficiary in his $2,000 policy from the plaintiff, as sole beneficiary, to his wife as principal beneficiary.

Joseph J. Madden, Elkins, W. Va., for plaintiff.

John R. Morris, U. S. Atty., Clarksburg, W. Va., for defendant and third party plaintiff.

Reference was made in said answer to the statutory provision, 38 U.S.C.A. § 803, that "no person may carry a combined amount of National Service Life Insurance and United States Government life insurance in excess of $10,000 at any one time".

The answer denies that the defendant owes the plaintiff the sum of $2,000 and follows with a "Cross-claim for Interpleader", setting up certain facts and praying that Kathleen Pearle Hayes, the widow of insured, be made a party defendant to the complaint "and to this cross-claim", and praying further that the Court order the plaintiff and Kathleen Pearle Hayes to interplead their respective claims so that the Court might adjudge whether either of them is entitled to the proceeds of the $2,000 insurance policy.

The Court then ordered that Kathleen Pearle Hayes, the widow of insured, be made a party defendant and that she be served with summons, a copy of defendant's answer and cross-claim for interpleader and a copy of such order, all of which was accordingly done. The third party defendant, Kathleen Pearle Hayes, then filed her answer, setting forth the claim that the application of the insured for $10,000 National Service Life Insurance constituted, in legal effect, a change in the designation of beneficiary of the $2,000 policy involved in this action from the plaintiff, as sole beneficiary, to the third party defendant, the insured's wife, as principal beneficiary. Said answer of the third party defendant concluded with the prayer that the Court should deny the plaintiff's claim to the $2,000 policy; that the Court adjudge that the third party defendant is entitled to the proceeds of the $2,000 policy and order the defendant, The United States of America, to pay such proceeds to the third party defendant in addition to her costs.

The parties agreed that the Court should hear and determine the questions here presented upon a written stipulation as to certain facts, supplemented by such testimony of witnesses as the parties might desire to offer.

The written stipulation provided that the issue in this case is "whether Two Thousand Dollars ($2,000.00) United States Government life insurance, as to which the serviceman designated the plaintiff, Bessie Edith Hayes, his mother, as sole beneficiary at the time of the original application, is payable to her as such, or whether the serviceman, by applying for Ten Thousand Dollars ($10,000.00) National Service Life Insurance on July 1, 1943, as to which he designated his wife, Kathleen Pearle Hayes, third party defendant, as principal beneficiary, thereby intended to make her beneficiary also of the Two Thousand Dollars ($2,000.00) United States Government life insurance".

The plaintiff testified in her own behalf and offered the testimony of her husband, the father of the insured, and her daughter, a sister of the insured. The Government offered no testimony. The third party defendant testified in her own behalf. The plaintiff and her witnesses undertook to testify as to certain alleged conversations relating to the $2,000 policy had with the insured on the occasion of his last visit to the plaintiff's home in 1947. The substance of these conversations, if such testimony was properly admissible, would lead to the conclusion that the insured intended that the plaintiff should have the proceeds of the $2,000 policy. The third party defendant objected to the testimony of the plaintiff and her husband pertaining to such conversations, claiming that said witnesses were disqualified to so testify by virtue of the West Virginia statute as found in Chapter 57, Article 3, Section 1 of the Code of West Virginia, the pertinent portion of which is as follows:

"* * * No party to any action, suit or proceeding, nor any person interested in the event thereof, nor any person from, through or under whom any such party or interested person derives any interest or title by assignment or otherwise, shall be

examined as a witness in regard to any personal transaction or communication between such witness and a person at the time of such examination, deceased * * *, against the executor, administrator, heir-at-law, next of kin, assignee, legatee, devisee or survivor of such person * * *."

The testimony of the plaintiff's daughter as to these alleged conversations was unchallenged. The third party defendant denied that any such conversations were had by the plaintiff or her witnesses with insured at any time in her presence, and denied particularly the conversations alleged to have been had in 1947. She undertook to testify as to other conversations had by her with the insured respecting the Government insurance carried on the life of her husband. The plaintiff objected to the testimony of the third party defendant as to these alleged conversations on the ground that the West Virginia statute hereinbefore quoted disqualified her from so testifying as to conversations and personal transactions relating to matters in which she had an interest. At the time the testimony of the three challenged witnesses was offered, the Court did not rule upon the objections.

From the pleadings, from the written stipulation of facts and from that portion of the testimony of witnesses which was considered by the Court, the Court finds that the pertinent facts in connection with this controversy are as follows.

At the time of the death of the insured, Ray William Hayes, Jr., in February 1948, United States Government insurance policy No. K–1,047,984 for the sum of $2,000, issued on the life of Ray William Hayes, Jr., effective from January 1, 1938, was in full force and effect, which policy had been placed on an extended insurance basis with coverage expiring in August 1949. The plaintiff was designated in said policy as the sole beneficiary and the proceeds of said policy have not been paid to either the plaintiff or to the third party defendant.

The allotment placed in effect by the insured to pay the premiums on said $2,000 policy expired in September 1941 shortly after the insured's marriage to the third party defendant in August 1941. Insured was notified by the proper authority of the expiration of this allotment by letter of September 25, 1941, and he was notified of the lapse of this policy and of the privilege of reinstatement by letters dated November 19, 1941, December 17, 1941, and January 28, 1942. He was further notified by letter dated February 28, 1942, of the placing of the policy on an extended insurance basis with coverage expiring in August 1949.

During the period covered by these letters, insured was in the United States Navy, stationed at Portsmouth, Virginia, and insured's wife, the third party defendant, joined him there in October 1941, where she remained until June 1942, at which time insured was sent to the Canal Zone. In May 1942, while insured and his wife were living in Portsmouth, their daughter was born.

From unchallenged testimony it appears that the insured, prior to his marriage to the third party defendant, had taken out an insurance policy on his life in the amount of $2,000 with Pilot Life Insurance Company, in which his mother, the plaintiff, was named as beneficiary. Subsequent to his marriage, the insured asked the plaintiff for the return of this policy, which she delivered to him, and he thereupon executed all the necessary forms to substitute his wife, the third party defendant herein, as the principal beneficiary in such policy. The insured continued to keep said policy in force and the proceeds thereof were paid to the third party defendant following his death.

On July 1, 1943, while insured was stationed in the Canal Zone, he executed an application for $10,000 National Service Life Insurance, designating his wife as principal beneficiary and his mother as contingent beneficiary, thus failing to include his infant daughter as a beneficiary. He placed in effect as of July 1943,

a monthly allotment of $6.70, which is the amount required to pay the premiums on the $10,000 insurance applied for, which allotment was paid through February 1948. The form of application is set forth in full in footnote one.[1] In the space provided in the application form for a statement of the amount of either United States Government or National Service Insurance then being carried by applicant, no reference to the United States Government $2,000 policy was made, a line being drawn through that space.

Insured was stationed in the Canal Zone for approximately twenty-eight months following June 1942. The third party defendant lived with her mother at 715 Harrison Avenue, Elkins, West Virginia, that being the same address given by insured on his application for the $10,000 policy as his residence, from the time the insured was sent to the Canal Zone until the time of his death. Her infant daughter was with her during that period. Insured corresponded with his wife when they were apart and, after his return from the Canal Zone, spent his annual leave of approximately thirty days with his wife and daughter at their Elkins address and made short visits to the home of the plaintiff at Norton, West Virginia. The evidence disclosed that insured's father was General Mine Foreman at the Norton, West Virginia, mines and that insured's father and mother were not in want or in straitened financial circumstances.

During the period from January 1942, when he was notified that the $2,000 policy had been placed on an extended insurance basis, until the time of his death,

1. Application for National Service Life Insurance

Name In Full    Hayes, Jr. Ray William    Ph  M1/3   USN
                                            Rank or Rating

Home Address    715 Harrison Ave., Elkins, West Va.

Born At    Harding, West Va.              25      May      1918
                                          Day     Month    Year

I hereby apply for insurance on the five year level premium Term Plan in the amount of $10,000. I am now carrying    ................

                                          U. S. Gov't. or National Service

Life Insurance in the amount of $10,000.

Full Name of Principal Beneficiary    Kathleen Pearle Hayes

Relationship of Principal Beneficiary    Wife

Address of Principal Beneficiary  715 Harrison Ave.    Elkins
                                  (Number & Street)  City or P. O.
                                            West Va.
                                            (State)

Full Name of Contingent Beneficiary    Bessie Edith Hayes

Relationship of Contingent Beneficiary    Mother

Address of Contingent Beneficiary    Norton, West Va.

** I request that the effective Date of this Policy be made the    1st    day of Aug.   1943.

** Check or Money Order payable to the Treasurer of the United States in the amount of $——— is attached to this application.

** I will authorize (have authorized) an allotment of pay, $ 6.70 monthly) involving first monthly checkage for the month of  July   1943.

**    1 July 1943                              Ray William Hayes, Jr.
    (Date of application)                      (Signature of applicant)
Witnessed:
        A. R. Manning                         (Signature illegible)
                                              (Commanding Officer)

insured made no provision for the reinstatement of said policy and made no effort to specifically change the designation of the beneficiary therein. In fact, he failed to take any particular action affecting the $2,000 policy unless his application for the $10,000 policy could be construed as a direction to change the beneficiary therein from his mother to his wife.

The application for the full $10,000 of National Service Life Insurance was refused because the $2,000 policy was still in force and because servicemen could not carry a combined amount of National Service Life Insurance and Government life insurance in excess of $10,000 at any one time. A certificate for $8,000 National Service Life Insurance, in which the third party defendant was designated as primary beneficiary and the plaintiff was designated as contingent beneficiary, was issued and delivered to the third party defendant. There is no direct evidence that the insured received a formal notice of the reduction in the amount of insurance actually issued below the amount for which application was made. However, as stated, the certificate for $8,000 was delivered to insured's wife and he not only corresponded with her but visited her on several occasions between the time of the delivery of the policy to her and the time of his death.

During his period of naval service, the insured was not assigned to active combat duty. His death was the result of an accident when he was stationed in California and connected with a Naval Base Hospital, he being then still in the naval service as a Chief Pharmacist Mate.

After insured's death, the plaintiff was notified that she was named as beneficiary of the $2,000 policy, which was payable in one sum, and she filed claim therefor on April 21, 1948. On June 11, 1948, the Veterans' Administration advised the third party defendant that she was beneficiary of the $2,000 policy as well as the $8,000 National Service Life Insurance policy and on June 14, 1948, the plaintiff was advised of this conclusion. The Solicitor's Office was requested to render an opinion on the question which is presented as an issue in this case and on December 2, 1948, a decision was given to the effect that the subsequent application for the $10,000 coverage constituted a change of beneficiary as to the existing $2,000 policy. The plaintiff appealed to the Board of Veterans Appeals, which Board affirmed the administrative decision on November 10, 1949.

There is no question as to the right of the insured to designate his mother as the beneficiary of his insurance and, "subject to regulations", he was authorized to change the beneficiary to his wife without the consent of his mother. The applicable regulations governing the right to change the beneficiary, as promulgated by the Administrator in pursuance of his statutory authority, 54 Stat. 1012, 38 U.S.C.A. § 808, pertinently provide:

"* * * A change of beneficiary, to be effective, must be made by notice in writing, signed by the insured and forwarded to the Veterans Administration by the insured or his agent, and must contain sufficient information to identify the insured. Whenever practical, such notices shall be given on blanks prescribed by the Veterans Administration. Upon receipt by the Veterans Administration, a valid designation or change of beneficiary shall be deemed to be effective as of the date of execution * * *."

Upon the facts as stated, the Court announces certain conclusions as contained in the following paragraphs.

The regulations to be followed in effecting a change of beneficiary were not strictly observed. We begin with the proposition that the burden to establish a valid change of beneficiary in the $2,000 policy, within the meaning of the applicable statute and regulations, is upon the one asserting and relying upon a change of beneficiary in such policy, in this case the third party defendant.

■■ It has been held that it is the duty of the courts to give effect to the wishes and intentions of the men in the service, if it is reasonably possible to ascertain them from the available evidence which they leave behind. It is not required that the rigid forms of ordinary life insurance be followed, but it is sufficient if the intention is made certain and affirmative action taken to express it. Rutledge v. United States, D.C., 72 F. Supp. 352; affirmed in Mitchell v. United States, 5 Cir., 165 F.2d 758, 2 A.L.R 2d 484.

It appeared in the Rutledge case from competent testimony that the insured had actually executed the Government insurance form in which he named his wife as beneficiary of $10,000 insurance, the original policy having named his mother as the beneficiary, but which form did not reach the Veterans' Administration. The Court in that case held that a change of beneficiary had been effected and cited with approval Citron v. United States, D.C., 69 F.Supp. 830; Walker v. United States, D.C., 70 F.Supp. 422; Van Doren v. United States, D.C., 68 F.Supp. 222; Roberts v. United States, 4 Cir., 157 F.2d 906.

■ It has been held that, without exception, a mere intent to change a beneficiary is not enough. Such an intent must be followed by positive action on the part of the insured evidencing an exercise of the right to change a beneficiary. Where the courts diverge is as to the degree of affirmative action necessary to effect a change. Collins v. United States, 10 Cir., 161 F.2d 64.

In the Collins case the insured, in attempting to change the beneficiary in a Government insurance policy from his father to his wife, procured the proper form to be used in directing the desired change of beneficiary and filled it out but failed to send it to the Veterans' Administration in accordance with the regulations. The Court held that the insured had done everything reasonably necessary to accomplish the change of beneficiary, leaving only ministerial acts to be performed, and at page 68 said:

"Here we have more than the expressed intent of the insured to change the beneficiary. We have positive and affirmative action on his part. * * * Nothing remained for him to do in order to authorize the insurance company to make the change as soon as the notice came to its attention."

In Bradley v. United States, 10 Cir., 143 F.2d 573, the facts were that a policy in the amount of $10,000 was issued on November 1, 1940, on the life of Eugene Morris Bradley, a flying officer in the United States Army, in which policy his mother was named as the beneficiary; that insured was married on May 30, 1941, and was killed on August 21, 1941; that on August 20 he executed a "Confidential Personal Report" required of all flying officers on a prescribed form, in which he listed Government insurance in the amount of $10,000 and his wife as beneficiary. Competent testimony of disinterested witnesses was introduced before the trial court to the effect that insured had, on numerous occasions, discussed with the witnesses the proposition of changing the beneficiary of his insurance from his mother to his wife and had sought and obtained advice from them concerning the method for effecting the change, expressing an intention to do so. The Court held that there had been no change of beneficiary effected and found that the proceeds of the policy were payable to the insured's mother, the named beneficiary in the policy. At page 576 the Court said:

"The manifest purpose of the foregoing regulation is to create a legal standard for the orderly administration of the Act by providing a means and method for the exercise of the statutory right of the insured to change the beneficiary of his insurance, and to protect the insurer against conflicting claims for the proceeds of the policy. * * * The undisputed evidence fully sup-

ports the finding of the trial court to the effect that the insured expressed an intent to change the beneficiary of his insurance from his mother to his wife, and if the expressed intent of the insured, without more, will justify the judicial substitution of the intended beneficiary, the judgment of the trial court is correct and should be affirmed. But the principle which actuates the courts in giving effect to the ascertained intentions of the insured has application only where the party has attempted to act for himself. The expressed intention of the insured to change the beneficiary, standing alone and unaccompanied by some affirmative act, having for its purpose the effectuation of his intention, is insufficient to effect a change of beneficiary and the courts cannot act when he has not first attempted to act for himself. * * * In every case involving War Risk Insurance wherein the courts have recognized and decreed a change of beneficiary, the facts have amply shown not only an expressed intention, but positive and unequivocal acts on the part of the insured, designed to effectuate his expressed intentions. * * * And in the absence of some act or deed having for its purpose the execution of the insured's intention, the courts have refused to decree a change of beneficiary."

The case of Roberts v. United States, reported in 157 F.2d 906, decided by the Fourth Circuit Court of Appeals, in the opinion by Judge Soper, approved the views expressed in the case of Bradley v. United States, supra, wherein it was stated that in War Risk Insurance cases involving change of beneficiary, the courts brush aside all legal technicalities in order to effectuate the manifest intention of the insured; and that if he manifests an intent to make a change and has done everything reasonably within his power to accomplish his purpose, leaving only ministerial acts to be performed by the insurer, the courts will treat that as done which ought to have been done and give effect to the insured's will.

In the Roberts case, it was shown by competent evidence that Joe William Roberts, an officer in the Air Corps of the United States Navy, had made his father the beneficiary of the proceeds of a National Service Life Insurance policy in the amount of $10,000. This insurance became effective on May 14, 1942. Insured was married on December 19, 1942, and on December 22, 1942, accompanied by his wife and another young married couple, made a trip from the place where they were stationed to a nearby city. Each of these young married men intended to change the beneficiary named in his respective insurance policy in favor of his wife. Each filled out certain papers which were furnished him, but the designation of Mrs. Roberts as beneficiary in the insurance policy did not reach the Veterans Bureau. There was other corroborating evidence of the fact that Roberts, the insured, had taken the steps necessary to effectuate the intended change of beneficiary. The Court of Appeals found upon the facts that the insured not only expressed his intention to change the beneficiary in the policy, but also set in motion the machinery devised by the United States to accomplish the desired result. The Court distinguished this case from the Bradley case and held that Roberts had performed the affirmative act for the lack of which the majority of the court in the Bradley case concluded that the change of beneficiary had not been accomplished.

The case of McKewen v. McKewen, 5 Cir., 165 F.2d 761, holds:

"Where documents are sufficient to evidence an intent and effort on part of soldier to change beneficiary of national service life policy in substantial compliance with regulation, the fact that documents were not received by Veterans' Administration until after death of soldier does not prevent change from becoming effective. * * * The in-

'tention, desire, and purpose of soldier as to designation of beneficiary of national service life policy should be given effect by the court if it can reasonably be done."

■ In the instant case, the insured, Ray William Hayes, Jr., was notified after his marriage that the $2,000 policy had lapsed, that he had the privilege, of reinstatement and, later, that the policy had been placed on an extended insurance basis with coverage expiring in August 1949. At that time he did nothing to change the named beneficiary in the policy from his mother to his wife although at or about the same time he took all necessary steps to change the beneficiary in his $2,000 policy carried with the Pilot Life Insurance Company from his mother to his wife, thus indicating his knowledge of the fact that some affirmative action was required on his part to effectuate a desire to change a beneficiary. When he was in the Canal Zone, he made application for $10,000 of National Service Life Insurance, pursuant to which application a policy was issued for only the sum of $8,000 and was sent to his wife, the named primary beneficiary therein. The insured corresponded with his wife during his stay in the Canal Zone, and after his return to the United States visited her at intervals and it is beyond the scope of imagination to conclude that the insured had no knowledge of the issuance and delivery of the $8,000 policy to his wife instead of the $10,000 policy as specified in his application. From the time of his return to the United States until his death, he was charged with the knowledge that the $2,000 policy was still in force and that his mother's name appeared as the designated beneficiary therein. He had ample opportunity to follow the prescribed regulations if he desired to effectually substitute his wife as the beneficiary but he took no action and made no move whatsoever, so far as the record discloses, to procure and file the simple form required by the regulations in such cases.

This Court recognizes the duty of the courts to brush aside all legal technicalities in order to effectuate the manifest intention of the insured, but it is not convinced that the courts should go to the extreme in attempting to excuse the obvious disregard of the regulations where ample opportunity was afforded to follow them. In many of the decided cases, the insureds were in great haste and acted under pressure immediately prior to entering upon some phase of military action where the calculated risk of death would be materially increased. They made such effort as they could under existing circumstances, and in these cases the courts have been willing to go to extremes in concluding that changes in policy beneficiaries had been effected where the intention of the insured could be plainly ascertained.

In this case, the intention of Ray William Hayes, Jr., to substitute his wife in the place and stead of his mother as the named beneficiary in the $2,000 Government policy is not clear and the third party defendant has failed to carry the burden which is required of her. Perhaps, after the $8,000 policy was issued and delivered to his wife, the insured intended that the $2,000 Government insurance policy should be allowed to remain unchanged until the extended period of coverage had expired in 1949, further intending at that time to increase the coverage for the protection of his wife by adding an additional $2,000 of National Service Life Insurance. It is difficult to understand his actions. In his application of July 1943, he named his mother as the contingent beneficiary instead of his infant daughter, and he omitted all reference to the $2,000 Government policy then in force. The Court is unable to reach the conclusion that insured manifested an intention to remove the plaintiff as the named beneficiary in his $2,000 policy, or that he did everything reasonably within his power to accomplish such purpose, even if that should be found to be his purpose, leaving only ministerial acts to be performed.

The Court does not deem it necessary to discuss at length the testimony of the plaintiff, her husband and the third party defendant and the objections thereto since the decision of the principal issue in this case is not based, in any degree, upon such testimony.

■ Without attempting to cite the numerous West Virginia Supreme Court decisions bearing upon this subject, the Court is of the opinion that the plaintiff, her husband and the third party defendant were clearly incompetent to testify as to conversations, personal transactions and communications between them and the insured by virtue of the provisions of the West Virginia statute hereinbefore cited. Each of the parties, the plaintiff and third party defendant, has a direct interest in the outcome of the action as against the interest of the other. Each is, in effect, both a plaintiff and a defendant in this action, and each seeks to recover the proceeds of the $2,000 Government policy. Both cannot so recover, and such testimony of each is in her own favor and against the other.

■ The West Virginia Supreme Court has decided that "if one consort is forbidden by [this] section [W.Va.Code 57–3–1] to give testimony in regard to a personal transaction or communication had with a decedent, because of his or her being a party to or interested in the result of the suit, the other consort is also denied the right to testify". Freeman v. Freeman, 71 W.Va. 303, at page 307, 76 S.E. 657, 659. Thus, the incompetency of the testimony of the plaintiff would render incompetent the testimony of her husband.

While the admissibility of the testimony of the plaintiff's daughter was unchallenged, it was so vague, uncertain and indefinite as to have little or no probative value. Applying the ordinary rules in ascertaining the degree of credibility to which this witness is entitled, the Court can attach little weight to it and has excluded it from consideration in attempting to find the answer to the question here presented.

The foregoing will be adopted as containing the Court's findings of fact and conclusions of law.

It is the opinion of the Court that the plaintiff is entitled to the proceeds of the $2,000 Government life insurance policy, and counsel for the plaintiff is directed to prepare and submit an order consistent with the findings and conclusions herein contained.