**WIDNEY v. UNITED STATES et al.**

**No. 3971.**

United States Court of Appeals
Tenth Circuit.

Dec. 30, 1949.

Rehearing Denied Jan. 26, 1950.

Tom W. Garrett, Oklahoma City, Okl., for appellant.

John R. Couch, Oklahoma City, Okl. (Clayton B. Pierce, Oklahoma City, Okl., on the brief), for appellees.

Before PHILLIPS, Chief Judge, and MURRAH and PICKETT, Circuit Judges.

PHILLIPS, Chief Judge.

John T. Widney [1] brought this action to recover on a $10,000 policy of National Service Life Insurance issued to his son, John Guy Widney.[2] The insured enlisted in the military service on October 26, 1943, and died while in the service on September 16, 1945, leaving surviving him his widow, Joan B. Widney.[3] At the time the policy was issued the insured was unmarried and he designated John T. as beneficiary and his mother, Ramona G. Widney,[4] as contingent beneficiary. The policy was mailed to John T. about the time of its issue in 1943 and remained in his possession. Joan filed an answer in which she set up that she was the beneficiary under the policy.[5]

The evidence considered in a light most favorable to Joan established these facts:

The insured and Joan were high school sweethearts at Kaw City, Oklahoma. On November 18, 1944, while insured was stationed at Lancaster Field, California, he and Joan were married. Their marital relations were congenial and happy. They had no marital difficulties. Joan lived near

1. Hereinafter referred to as John T.
2. Hereinafter called the insured.
3. Hereinafter called Joan.
4. Hereinafter referred to as Ramona.
5. On January 26, 1946, the Veterans Administration made an award to Joan as beneficiary under the policy and paid her benefits under the policy from September 16, 1945, through April 15, 1946. On May 28, 1945, the Veterans Administration made an award to John T. as beneficiary and paid him benefits under the policy for the period from September 16, 1945, through November 15, 1947. On August 31, 1948, the Board of Veterans Appeals found the insured had effected a change of beneficiary from John T. to Joan and rendered the following decision: "The Board finds that entitlement of the appellant (widow) to insurance benefits is established. Her appeal is allowed and this decision constitutes final administrative denial of the claim of the father."

by the fields at which insured was stationed.

When insured was processed in at Lancaster Field, prior to his marriage, he made out Form 128, Personal Affairs Statement, in which he listed such policy and stated that his father, John T., was designated as principal beneficiary and his mother, Ramona, as contingent beneficiary.

Thomas L. Wyatt was a close friend of insured. They met while they were stationed at Santa Ana, California, in 1944, prior to their transfer to Lancaster Field, and served together until insured's death. They spent their off-duty hours together. Wyatt was best man at the wedding of insured and Joan. After insured had made out Form 128, while being processed in at Lancaster Field, he showed a copy of it to Wyatt. While stationed at Lancaster Field, insured and Wyatt agreed that in the event of the death of either, the survivor would take the body home.

Insured and Wyatt were transferred to Gardner Field, California, about December 1, 1944. While being processed in at Gardner Field, insured made out and filed a new Form 128. He was required so to do since his personal status had changed as the result of his marriage to Joan. After filling out Form 128 at Gardner Field, insured showed it to Wyatt. At the same time, insured made out and signed the Veterans Administration form for effecting a change in beneficiary, which designated Joan as principal beneficiary and Ramona as contingent beneficiary, showed it to Wyatt, and stated this is my change of beneficiary. Thereafter, at Lancaster Field, in December, 1944, and before Joan had moved to Gardner Field, insured told Joan he had changed the beneficiary under such policy, naming Joan as principal beneficiary and Ramona as contingent beneficiary.

In March, 1945, insured executed an A. G.O. Form No. 41, designating Joan to receive the six months' gratuity pay in the event of his death.

Insured was transferred from Gardner Field to Pecos, Texas. When being processed in at Pecos, he made out a new Form 128 on April 9, 1945, in which he listed the policy and stated that the beneficiaries designated thereon

"are:

"Principal Joan B. Widney wife all Contingent Ramona G. Widney mother all"

On April 16, 1945, at Pecos, insured made out a new A.G.O. 41 (Sept. 16, 1943), that Form having superseded A.G.O. 41, July 17, 1942, in which he again designated Joan to receive the gratuity pay in the event of his death.

At insured's direction, a copy of Form 128, made out at Pecos, was forwarded to Joan at Box 211, Ordnance, Oregon, the address of Joan's mother. It was later forwarded to Joan in June, 1945, at Lincoln, Nebraska, where she and insured were living while he was stationed at the Lincoln Army Air Base. She later filed such copy with the Veterans Administration.

While insured and Wyatt were stationed at Lincoln, and after they were commissioned as officers, insured told Wyatt "in the event anything should happen to him [insured] he would want his wife to have everything that he had."

The Board of Veterans Appeals caused a search to be made of the files in the Service Department and in the Veterans Administration. Form 128 and the change of beneficiary form, made by insured at Gardner Field, and Form 128, made by insured at Pecos, could not be found. Only A.G.O. Form 41, made by insured at Pecos on April 16, 1945, was found. The Board stated it was obvious that some of insured's records had been lost.

The trial court found that insured completed a change of beneficiary form upon his arrival at Gardner Field, wherein he designated Joan as principal beneficiary, and delivered it to the Personal Affairs officer for mailing.

Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides that in an action tried without a jury, findings of fact shall not be set aside unless clearly erroneous and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

■ It was incumbent on Joan to establish by evidence an intention on the part of the insured to change the principal beneficiary in the policy by designating her in place of John T. and an affirmative act by the insured, having for its purpose the carrying such intention into effect.[6]

■ In order to effect a change in beneficiary, it was not necessary that the executed change of beneficiary form be delivered to the Veterans Administration before the death of the insured. It is sufficient if the insured, before his death, set in motion steps for its delivery which manifested his intent that it should be so delivered.[7]

The question presented is whether such finding of the trial court is clearly erroneous.

While there is no direct evidence that insured delivered the change of beneficiary form to the Personal Affairs officer at Gardner Field, there are many circumstances that support that conclusion.

The marital relations of insured and Joan were happy and congenial throughout their married life. The marriage was the culmination of a high school romance. Insured was in the Air Force and realized the hazards attendant thereon. He discussed the possibility of death with his buddy, Wyatt, on at least two occasions. To change the beneficiary in the policy to his wife would be in response to a natural and normal impulse. Shortly after the marriage, on his arrival at Gardner Field, he made out a Veterans Administration form to effect a change of beneficiary designating Joan as principal beneficiary and Ramona as contingent beneficiary. He showed that form to Wyatt and told him that was his change of beneficiary. At the same time, he made out and filed Form 128, which listed the policy and stated that Joan was the principal beneficiary and Ramona the contingent beneficiary. That the change of form of beneficiary did not reach the Veterans Administration is not significant. If it was delivered to the Personal Affairs officer, it is reasonable to infer it was lost because Form 128, made out and delivered to such officer at the same time, was lost. Likewise, Form 128, made out at Pecos, was lost.

Shortly after being processed in at Gardner Field, insured told Joan that he had changed the beneficiary in the policy, designating her as principal beneficiary and Ramona as contingent beneficiary.

Again, when insured was processed in at Pecos, he made out a new Form 128 and listed the policy therein and stated that the beneficiaries were Joan, principal, and Ramona, contingent. And at Lincoln, he told Wyatt that in the event of insured's death, he wanted Joan to have everything he had.

Certain veterans apparently believed that A.G.O. No. 41, which provided for designation of beneficiaries to receive accrued pay and six months "gratuity pay," was the proper form to effect a change of beneficiary. See Coleman v. United States, D. C.Cir., 176 F.2d 469, 471. But insured labored under no misapprehension as to the proper steps to be taken to effect a change in beneficiary. He made out the proper Veterans Administration form, designated Joan as the principal beneficiary therein, showed it to Wyatt and told Wyatt that was his change of beneficiary. Therefore, when he told Joan shortly thereafter that he had changed the beneficiary in the policy and designated her as principal beneficiary and Ramona as contingent beneficiary, and again when he stated in Form 128, made out at Pecos, that Joan was the principal beneficiary and Ramona the contingent beneficiary, he knew the change could not be effected by Form 128 or A.G. O. 41, and that to effect the change, it was necessary to fill out and file the Veterans Administration form for changing a beneficiary. Unless he had made out and filed that form changing the beneficiary to Joan, his statement to Joan and his statements in Form 128, filled out at Gardner Field and at Pecos, were knowingly untrue. There

6. Bradley v. United States, 10 Cir., 143 F.2d 573, 576; Coleman v. United States, D.C.Cir., 176 F.2d 469, 471.

7. See cases cited in Note 6.

is nothing to indicate insured had any reason to make a false statement either to Joan or in Form 128. Hence, we think his statements must be accepted as true, and as strongly indicative that he filed the change of beneficiary form with the Personal Affairs officer at Gardner Field.

Here, the Board of Appeals and the trial court, charged with the duty of determining the issues of fact from the facts established and the inferences to be drawn therefrom, have found that the insured intended to change the principal beneficiary and that he took the requisite affirmative steps to effectuate that intention. If, from the established facts, reasonable men might draw different inferences, it is not within the province of this court to substitute its judgment for that of the trial court as to which inference should be drawn.[8]

We are of the opinion that in the light of the facts and the reasonable inferences that may be drawn therefrom, it cannot be said that the finding of the trial court was clearly erroneous.

Affirmed.

---

8. United States v. Ingalls, 72 App.D.C. 383, 114 F.2d 839, 842; Grip Nut Co. v. Sharp, 7 Cir., 150 F.2d 192, 196, 197;

Gary Theatre Co. v. Columbia Pictures Corporation, 7 Cir., 120 F.2d 891, 894.